

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00125-CV

**IN THE INTEREST OF F.S.F.**, a Child

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-01896
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice
Concurring Opinion by: Irene Rios, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Lori I. Valenzuela, Justice[1]

Delivered and Filed: August 14, 2024

AFFIRMED

This appeal arises from the trial court's order, signed after a bench trial, that terminates the parental rights of appellant L.F.R. ("Mother"), the biological mother of F.S.F. ("Child").[2] On appeal, Mother raises three issues, which may be liberally construed as four. In Mother's first, second, and third issues, she argues that the evidence is legally and factually insufficient to support the trial court's findings that: (1) Mother allowed Child to remain in a physically or emotionally dangerous condition or surrounding (subsection (1)(D) endangerment by conditions or surroundings); (2) Mother engaged in conduct or knowingly placed Child with persons who

---

[1] Justice Lori I. Valenzuela concurs in judgment only.
[2] We refer to F.S.F. and F.S.F.'s family members by a pseudonym in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2).

engaged in conduct which endangers the physical or emotional well-being of Child (subsection (1)(E) endangerment by conduct); and (3) termination of Mother's parental rights is in the best interest of Child (subsection (2) best interest). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D)–(E), (b)(2). Mother also argues that (4) the trial court abused its discretion in making its conservatorship finding upon a legally and factually insufficient termination order. *See id*. § 151.131(a). We affirm.

## I. BACKGROUND

In November 2022, the Texas Department of Family and Protective Services (hereinafter the "Department") initiated the underlying proceeding by filing a petition to terminate the parental rights of Mother and J.L.F., an individual that the Department named "alleged father," to Child, who was a newborn at the time.[3] Thereafter, the trial court signed an "Order for Protection of a Child in an Emergency" that, among other things, appointed the Department as Child's "temporary sole managing conservator." Mother executed a family service plan, and it was adopted and incorporated into a court order. Meanwhile, Child was placed with unrelated foster parents ("Foster Parents").

The Department's request to terminate the parent-child relationship proceeded to a bench trial. At trial, Mother and Aleta Worden, a conservatorship worker with the Department, testified. Mother, F.H.R., and J.S.S. were each represented by separate counsel.

At the trial's conclusion, the trial court found by clear and convincing evidence that: (1) Mother allowed Child to remain in a physically or emotionally dangerous condition or surrounding; (2) Mother engaged in conduct or knowingly placed Child with persons who engaged in conduct which endangers the physical or emotional well-being of Child; (3) Mother

---

[3] In the Department's third amended — and live — petition, it alleged that (1) J.S.S. was Child's father, (2) F.H.R. was Child's "alleged father," and (3) an individual identified as "unknown father" was also Child's father.

constructively abandoned Child, who had been in the permanent or temporary managing conservatorship of the Department for not less than six months (subsection (1)(N) (constructive abandonment)); (4) Mother failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of Child who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of Child's removal from Mother under Chapter 262 for the abuse or neglect of the Child (subsection (1)(O) failure to comply with a court-ordered service plan); (5) Mother used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of Child, and (a) failed to complete a court-ordered substance abuse treatment program, or (b) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance (subsection (1)(P) use of controlled substance); and (6) termination of Mother's parental rights is in the best interest of Child. *See id*. § 161.001(b)(1)(D), (E), (N), (O), (P), (b)(2). The trial court appointed the Department as Child's permanent managing conservator.

Mother timely appeals from the termination order.[4]

## II. DISCUSSION

### A. Standard of Review

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. *See id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind

---

[4] The termination order also terminated the parental rights of F.H.R., as Child's "alleged father," J.S.S., as Child's "presumed father," and an "unknown father" as Child's "alleged father." None of these three "fathers" appeal the termination of their parental rights, and none is a party to this appeal.

of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In the Interest of J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id*. at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

## B.     Law on Endangerment

Subsection 161.001(b)(1)(D) allows a trial court to terminate a parent's rights if the court finds by clear and convincing evidence that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Subsection (E) allows a trial court to terminate a parent's rights if the court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id*. § 161.001(b)(1)(E). Endangerment means to expose to loss or injury, to jeopardize. *Id*. § 161.001(b)(1)(D); *see Tex.*

*Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996).

While both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re N.M.R.*, No. 04-22-00032-CV, 2022 WL 3640223, at *3 (Tex. App.—San Antonio Aug. 24, 2022, pet. denied) (mem. op.). Subsection (D) concerns the child's living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the child's environment. *Id*. (citing *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)). Under subsection (E), the cause of the endangerment must be the parent's conduct and must be the result of a conscious course of conduct rather than a single act or omission. *In re J.T.G.*, 121 S.W.3d at 125.

## C.    Endangerment Evidence & Analysis

In Mother's first and second issues, she argues that the evidence is legally and factually insufficient to support the trial court's findings that: (1) Mother allowed Child to remain in a physically or emotionally dangerous condition or surrounding; and (2) Mother engaged in conduct or knowingly placed Child with persons who engaged in conduct which endangers the physical or emotional well-being of Child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D)–(E).

The Texas Supreme Court has written that "[w]hile the recent improvements made by [a father in a termination proceeding] are significant, evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices." *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). Indeed, an offense committed by a parent before the birth of the parent's child "can be a relevant factor in establishing an endangering course of conduct." *In re E.J.M.*, 673 S.W.3d 310, 331 (Tex. App.—San Antonio 2023, no pet.) (en banc) (quoting *In re E.N.C.*, 384 S.W.3d 796, 804–05 (Tex. 2012)). Moreover, "[t]he specific danger to the child's well-being need not be established as an independent

proposition, but may be inferred from parental misconduct." *Id*. at 331 (quoting *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.)). Additionally, evidence of criminal conduct, convictions, and imprisonment and their effect on the parent's life and ability to parent may establish an endangering course of conduct. *In re B.C.S.*, 479 S.W.3d at 926.

Under *J.O.A.*, 283 S.W.3d at 346, the trial court may have considered four specific aspects of Mother's "long history of drug use and irresponsible choices." First, "[a] mother's use of illegal drugs during pregnancy endangers the physical wellbeing of her unborn child." *In re E.D.*, 682 S.W.3d 595, 608 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). Worden testified that the Department received a referral that Child was born addicted to opiates. Worden recalled that, shortly after being born, Child had tremors, which Worden characterized as a symptom of drug withdrawal. Worden confronted Mother about Child being born addicted to opiates, but Mother deflected by saying that "she went to Mexico to get some pills with [her mother ('Grandmother')]." Nevertheless, at trial, Mother acknowledged that she had lost her parental rights to seven other children before the instant termination proceeding and that her drug use played a role in each of the seven prior termination proceedings. Mother further acknowledged that Child was not her first child born addicted to drugs. As further evidence of Mother's drug use, Worden recounted that Mother's file with the Department evidenced an "extensive drug history," and Worden listed "methamphetamine, benzos, opiates, [and] heroine" as drugs that Mother had used in the past. The trial court, as the factfinder, may have found that Mother's persistent drug use while pregnant with Child and Child's older siblings constitutes evidence of endangering conduct. *See J.O.A.*, 283 S.W.3d at 346.

Second, "[c]riminal activity that exposes a parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child." *In re R.L.L.*, No. 04-18-00240-CV, 2018 WL 6069866, at *9 (Tex. App.—San Antonio

Nov. 21, 2018, pet. denied). Mother acknowledged being previously arrested and convicted for robbery, felony theft, and prostitution. She has also been arrested multiple times for assault bodily injury on a family member or married partner. Indeed, Child was born in late November 2022 and Mother has been incarcerated from January 28, 2023 up through the February 8, 2024 trial on the Department's petition to terminate her parental rights. Mother noted that she "was incarcerated . . . in some of [her other termination] cases, and [she] couldn't do anything about it." For the period from October 2023 until the time of trial, Mother has been held in a federal facility on a charge of "illegal reentry," which relates to her immigration status. Indeed, the Department asked Mother, "[s]o are you facing deportation currently," to which she answered, "[w]ell, yes. I am." *See In re E.N.C.*, 384 S.W.3d at 805 (noting "that deportation, like incarceration, is a factor that may be considered (albeit an insufficient one in and of itself to establish endangerment), its relevance to endangerment depends on the circumstances."). Although the threat of deportation alone is insufficient to establish endangerment, the trial court may have found that Mother's multiple incarcerations coupled with the pending threat of deportation constitute evidence of endangering conduct.

Third, after Child was born, Mother "didn't have nowhere to go," so she lived with the brother of J.S.S., her incarcerated husband at the time. Worden recalled that Mother's lack of stable housing was an issue in at least one of Mother's prior termination proceedings. Although Mother's unstable housing situation alone may be insufficient to establish endangerment, the trial court may have included Mother's residing with the brother of her incarcerated husband — who was unlikely to have been Child's father due to his incarceration period — along with other evidence of endangering conduct. *See In re B.N.D.*, No. 04-21-00286-CV, 2021 WL 6127883, at *4 (Tex. App.—San Antonio Dec. 29, 2021, no pet.) ("Mother's lack of stable housing and a

consistent home environment exposed the children to a life of uncertainty and instability that endangers the children's physical and emotional well-being.").

Fourth, Mother testified that Child's only special need was difficulty walking. Worden countered, noting that Child had special needs related to delayed development in walking, trouble swallowing, and regularly regurgitating food. Worden elaborated that Mother did not understand that Child's gastrointestinal and delay issues were caused by her drug use during pregnancy. Mother similarly contended that "her other children were not affected by the drug use." Although this evidence alone may be insufficient to establish endangerment, the trial court may have included Mother's denial of Child's special needs along with other evidence of endangering conduct. *See In re H.C.*, No. 02-23-00477-CV, 2024 WL 1561513, at *7 (Tex. App.—Fort Worth Apr. 11, 2024, no pet.) ("Evidence that the Parents denied and even refused to address [child's] special needs further supports the trial court's endangerment findings.").

Viewing all the evidence in the light most favorable to the trial court's judgment and recognizing that the factfinder is the sole arbiter of the witnesses' credibility and demeanor, we conclude a reasonable factfinder could have formed a firm belief or conviction that Mother "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Thus, the evidence is legally sufficient to support this finding. Further, after considering the entire record, including any disputed or contrary evidence, we conclude the evidence is factually sufficient to support the trial court's termination under subsection 161.001(b)(1)(E) of the Texas Family Code. Mother's second issue is overruled.[5]

---

[5] Because there is sufficient evidence of subsection (E) endangerment, we need not address Mother's first issue, which challenges the sufficiency of the evidence to support the trial court's findings that Mother committed the predicate act listed in subsection (D). *See In re C.E.*, 687 S.W.3d 304, 314 (Tex. 2024) (per curiam) ("Having found sufficient evidence to uphold the termination of Mother's parental rights under paragraph (E), we need not address paragraph

**D.      Law on Best Interest**

It is the burden of the party seeking termination to establish that termination is in the child's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[6] The set of factors is not exhaustive, and no single factor is necessarily dispositive of the issue. *Id*. at 372; *Int. of A.B.*, 269 S.W.3d 120, 126 (Tex. App.—El Paso 2008, no pet.).

We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, we also consider the factors set forth in section 263.307(b) of the Family Code. *Id*. § 263.307(b). Additionally, evidence that proves one or more statutory grounds for termination may be probative of a child's best interest, but it does not relieve the Department of its burden to prove best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

In conducting a best interest analysis, we consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Additionally, a factfinder may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id*. In analyzing the evidence within the *Holley* framework, evidence of each *Holley*

---

(D).”); *see also In re I.C.*, No. 04-23-00954-CV, 2024 WL 1543302, at *3 (Tex. App.—San Antonio Apr. 10, 2024, no pet.) (“Because we hold there is sufficient evidence that [mother] endangered [child's] well-being through her course of conduct, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), we consider only statutory ground (E).”).

[6] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d at 27.

**E.      Best Interest Analysis**

**1.      *Prior Terminations***

We have previously observed that "[c]ourts have recognized that prior terminations are relevant in determining whether a parent's rights to the child at issue should be terminated." *In re S.E.S.*, No. 04-17-00847-CV, 2018 WL 2418446, at *4 (Tex. App.—San Antonio May 30, 2018, pet. denied) (citing *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013)).   Therefore, a "prior termination of [a m]others parental rights to her other children [i]s evidence the trial court could consider in determining whether termination [i]s in [a child's] best interest." *Id*.   In this case, Mother has had her parental rights to seven other children terminated.

**2.      *Desires of the Child***

Mother testified:

> Q.      Tell [t]he [c]ourt a little bit about your understanding of what [Child's] favorite things are currently.
>
> A.      I mean, I've been incarcerated this whole time.  You know, she's been — [s]he was a baby, you know, the whole — the whole time that I've been, you know, incarcerated.  So I have not bonded with her, you know.

In contrast, Worden testified that:

> [Child is] very bonded [to her foster family].  They have five boys that dote on her. She has a special bond with her foster father especially.  They love her very much. She's a little princess.  She has bows, and galore, and everything that she needs.
>
> She's taken to all of her appointments that she needs to go to.  She does therapy in her home, both OT, PT, and speech.  They take her to a gastroenterologist for her issues with swallowing and that's worked through speech as well.  She's very loved and nurtured in the home.

Worden further testified that the Department believed that it would be in Child's best interest if Mother's parental rights were terminated and Child were adopted by foster family, explaining:

I believe it's the case, because the parents have not addressed the reasons for removal. They have not been able to complete a service plan, particularly mom. They haven't demonstrated that they're able to meet [Child's] needs. They haven't been able to demonstrate that they're capable of parenting [Child] or that they understand the disabilities that she has or may have in the future, especially related to autism.

[Child] does exhibit signs. She's very young, but she does do like an "O" shape with her mouth. She also does a lot of tongue-jutting. So there are probably going to be needs that need to be addressed through that. It doesn't appear that mom is capable of understanding what those needs are. She hasn't demonstrated that she's interested in complying with [t]he [c]ourt's order. She is in a nurtured, loved, and stable home right now and it can lead to permanency for [Child].

Mother's admission that she is not bonded with Child and Worden's testimony of Child's bond with her foster family implicates the first *Holley* factor (desires of the child). "When assessing the desires of children too young to testify articulately, courts can consider their bond with their parents and prospective adoptive parents." *In re A.N.C.*, 679 S.W.3d 311, 327 (Tex. App.—San Antonio 2023, no pet.) (quoting *E.F. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-11-00325-CV, 2011 WL 6938496, at *3 (Tex. App.—Austin Dec. 30, 2011, no pet.) (mem. op.)). "[T]he fact finder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent." *Id.* (quoting *In re G.C.S.*, 657 S.W.3d 114, 133–34 (Tex. App.—El Paso 2022, pet. denied)). Accordingly, the first *Holley* factor (desires of the child) weighs in favor of termination.

### 3. *Drug Use*

Mother acknowledged that she had lost her parental rights to seven other children before the instant termination proceeding and that her drug use played a role in each of her seven prior termination proceedings.

Illicit drug use is relevant to multiple *Holley* factors, including a child's emotional and physical needs now and in the future (the second factor), the emotional and physical danger to a child now and in the future (the third factor), Mother's parental abilities (the fourth factor), the

- 11 -

stability of Mother's home (the seventh factor), and the acts or omissions which may indicate an improper parent-child relationship (the eight factor). *See Holley*, 544 S.W.2d at 371–72. "Additionally, a parent's illegal drug use exposes [a] child to the possibility that the parent may be impaired or imprisoned." *In re A.M.L.*, 2019 WL 6719028, at *4 (citing *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.)).

### 4.    *Available Programs*

Worden testified that the service plan required Mother to complete a psychological evaluation, individual counseling, parenting classes, substance abuse classes and treatment, submit to random drug testing, gain employment, and find stable housing. Mother has, according to Worden, not completed any of the services in the service plan in the instant termination proceeding. The same is true, according to Worden, in Mother's prior termination proceedings. Worden testified that in Mother's prior investigations and termination proceedings instituted by the Department, Mother never completed her service plans. As the instant termination proceeding progressed, Mother told Worden that she had engaged in parenting classes and counseling. Worden contacted the prison where Mother was incarcerated to verify, and she was informed that Mother had not completed either service. Worden confronted Mother with the information prison officials relayed to her, and Mother backtracked and said that she was on "the wait list." Worden again verified that Mother's alternate explanation was also untrue.

Mother's failure to avail herself of the parenting classes and counseling implicates the fourth *Holley* factor (the parental abilities of the individuals seeking custody). *Holley*, 544 S.W.2d at 371–72. It also implicates the fifth *Holley* factor (the programs available to assist the individuals seeking custody to promote the child's best interest). *Id*. "A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in

the future." *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see also* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (providing courts may consider willingness and ability of the child's family to seek out, accept, and complete counseling services and willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time); *Holley*, 544 S.W.2d at 371–72 (listing parental abilities of an individual seeking custody and programs available to assist the individual as a best-interest factor).

### 5. *Stability of the Home or Proposed Placement*

After Child was born, Mother "didn't have nowhere to go," so she lived with J.S.S.'s brother. Before Mother was incarcerated, she was afforded three visits with Child. However, Mother missed all three visits.

At trial, Mother was incarcerated, but she contended that her sister ("Aunt") and Grandmother were possible placements for Child. However, Mother acknowledged that Child had never stayed with either Aunt or Grandmother. Worden testified that Aunt declined to participate in a home study and indicated that "she felt like she was being pressured to take [Child.]" Worden testified that although Grandmother was married to Mother's father, the couple did not live together. Instead, Grandmother lived with "an unidentified man," and Grandmother refused to give the Department any information on him. Worden also expressed concern about placing Child with Grandmother because Grandmother had "some criminal history as well," was open to only a temporary — not permanent — placement of Child, and Grandmother was with Mother when Mother obtained drugs.

Mother's protracted unstable housing — from staying with her brother-in-law after Child was born to being incarcerated at the time of trial — and foster family's willingness to be a long-term placement for Child implicate the seventh *Holley* factor (the stability of the home or proposed placement). *See Holley*, 544 S.W.2d at 371–72 (listing the stability of the home as a best-interest

factor); *In re G.V.*, No. 14-02-00604-CV, 2003 WL 21230176, at \*5 (Tex. App.—Houston [14th Dist.] May 29, 2003, pet. denied) (mem. op.) (noting the stability that a proposed placement promises "weigh[s] heavily in the court's finding that termination is in the best interest" of a child). The stability of the home or proposed placement (the seventh factor), weighs in favor of termination regarding Mother.

## F.     Best Interest Disposition

After viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in Child's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. The first (desires of the child), third (emotional and physical danger to a child now and in the future), fourth (parental abilities of the individuals seeking custody), fifth (programs available to assist the individuals seeking custody to promote the child's best interest), seventh (stability of the home or proposed placement), and eighth (parent's acts or omissions which may indicate that the existing parent-child relationship is improper) *Holley* factors weigh in favor of termination. *See In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at \*3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.) ("Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest — especially when the evidence shows the parental relationship endangered the child's safety."). We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in Child's best interest. *See id.* Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *see also In re A.B.*, 437

S.W.3d 498, 505 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment). Mother's third issue is overruled.

## G. Conservatorship

In Mother's fourth issue, she contends that the trial court abused its discretion in making its conservatorship finding upon a legally and factually insufficient termination order. We review the trial court's appointment of a nonparent as sole managing conservator for an abuse of discretion, and we will reverse that appointment only if we determine it is arbitrary or unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Having determined the evidence is legally and factually sufficient to support the termination of Mother's parental rights, we further hold the trial court did not abuse its discretion in appointing the Department as the managing conservator of Child. *In re L.G.R.*, 498 S.W.3d 195, 207 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (concluding no abuse of discretion in conservatorship finding where the evidence was sufficient to support termination of parental rights). We overrule Mother's fourth issue.

## H. Response to Concurrence

The concurrence believes that we are obligated to detail our analysis overruling Mother's legal and factual sufficiency challenges to both subsections (D) and (E). The concurrence's belief is rooted in a misreading of *In the Interest of N.G.*, 577 S.W.3d 230 (Tex. 2019) (per curiam) and survives only through a strained reading of recent supreme court precedent clearly rejecting the concurrence's position. *See In re C.E.*, 687 S.W.3d 304, 314 (Tex. 2024) (per curiam) ("Having found sufficient evidence to uphold the termination of Mother's parental rights under paragraph (E), we need not address paragraph (D).").

The supreme court held in *In the Interest of N.G.*: "We hold that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under section 161.001(b)(1)(D) *or* (E) of the Family Code." *Id*. at 237 (emphasis

added). This holding was based upon due-process protections and the significant "collateral consequences of terminating parental rights under section 161.001(b)(1)(D) *or* (E)." *In re N.G.*, 577 S.W.3d at 234 (emphasis added); *see id.* at 234–37. These consequences result because section 161.001(b)(1)(M) "provides that parental rights may be terminated if clear and convincing evidence supports that the parent 'had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) *or* (E) or substantially equivalent provisions of the law of another state.'" *Id.* (quoting TEX. FAM. CODE ANN. § 161.001(b)(1)(M) (emphasis added)).

> As the Third Court of Appeals succinctly put it:

> [T]h[e] collateral consequences [identified by the supreme court in *In the Interest of N.G.*] are identical whether there is a (D) finding alone, an (E) finding alone, or both a (D) and an (E) finding. If we were to conclude in this case that the evidence was insufficient under (E), that would not lessen the collateral consequences for the parents. The parents would still be subject to termination of their future parental rights under (M) because of our affirmance of the endangerment finding under (D). And if we were to conclude that the evidence was sufficient under both (D) and (E), that would not increase the collateral consequences for the parents. The affirmed endangerment finding under (D) is enough, by itself, to trigger the application of (M) in future termination proceedings, regardless of what we might decide as to the additional endangerment finding.

*See J.B.M.H. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-22-00661-CV, 2023 WL 2920315, at *8 (Tex. App.—Austin Apr. 13, 2023, pet. denied) (mem. op.).[7]

> True enough, the *N.G.* court concluded:

> [W]e grant the petition for review and reverse the court of appeals' judgment affirming the trial court's termination of the mother's parental rights because the court of appeals erred in failing to review the legal and factual sufficiency of the evidence to support section 161.001(b)(1)(D) *and* (E) findings as grounds for termination.

---

[7] The concurrence does not explain how due process could be denied to Mother based on an unreviewed (D) finding when, as here, we have reviewed and sanctioned an (E) finding from the same termination order and subsection (M) requires only a previous termination of a parent-child relationship "based on a finding that the parent's conduct was in violation of Paragraph (D) *or* (E)." TEX. FAM. CODE ANN. § 161.001(b)(1)(M) (emphasis added).

*In re N.G.*, 577 S.W.3d at 239 (emphasis added). This conclusion is "significant," as the concurrence puts it, because *In the Interest of N.G.* was the first case in which the supreme court specifically identified this error — a failure of an intermediate appellate court to review both (D) *and* (E) findings when challenged. The supreme court concluded that a court of appeals cannot ignore both findings when challenged on appeal. However, this conclusion does not imply that a court of appeals errs by detailing its analysis as to only (D) *or* (E) when affirming a termination order. When both grounds are challenged, error results, as in *In the Interest of N.G.*, when *neither* ground is analyzed, but due process is satisfied when termination is affirmed upon a detailed analysis of *either* ground. *See In re C.E.*, 687 S.W.3d at 314; *In re N.G.*, 577 S.W.3d at 234; *In re I.C.*, No. 04-23-00954-CV, 2024 WL 1543302, at *3 (Tex. App.—San Antonio Apr. 10, 2024, no pet.); *J.B.M.H.*, 2023 WL 2920315, at *8; *see also* TEX. FAM. CODE ANN. § 161.001(b)(1)(M). As we have previously stated: "Because grounds (D) and (E) implicate due process and due course of law requirements, we 'must provide the details of [our] analysis' for *either* of these grounds which we affirm." *In re X.J.R.*, No. 04-20-00368-CV, 2021 WL 112175, at *3 (Tex. App.—San Antonio Jan. 13, 2021, pet. denied) (emphasis added) (quoting *In re N.G.*, 577 S.W.3d at 237).

To be sure, this "either/or" requirement does not preclude analysis on both grounds. In fact, analysis on both grounds may naturally comprise the bulk of our case because the (D) and (E) grounds are interrelated. *See In re R.R.A.*, 687 S.W.3d 269, 279 (Tex. 2024) (detailing analyses as to (D) and (E)); *In re J.J.V.M.M.*, No. 04-22-00405-CV, 2022 WL 17479144, at *2 (Tex. App.—San Antonio Dec. 7, 2022, no pet.) (mem. op.) (consolidating examination of (D) and (E) findings). While the concurrence characterizes *In the Interest of I.C.* as a departure, it is our only precedent to explicitly consider whether a detailed analysis under both (D) and (E) is required, in contrast to permitted or done as a matter of course. *See In re I.C.*, No. 04-23-00954-CV, 2024 WL 1543302,

at *3 (Tex. App.—San Antonio Apr. 10, 2024, no pet.).[8] The other cases collected by the concurrence simply do not explore the matter.[9]

The supreme court's decision in *In the Interest of C.E.* should put the matter to rest. In that case, the trial court terminated the mother's parental rights based on the predicate subsections (D), (E) and (O), a best-interest finding, and section 161.003.[10] *See id.* at 307. The Second Court of Appeals found that the evidence was legally insufficient to sustain findings under the three predicate grounds and the finding under section 161.003. *In re C.E.*, No. 02-22-00285-CV, 2023 WL 170762, at *1 (Tex. App.—Fort Worth Jan. 12, 2023), *rev'd*, 687 S.W.3d at 314. The Texas Supreme Court reversed, holding the evidence was legally sufficient to support termination under the subsection (E) predicate ground. *In re C.E.*, 687 S.W.3d at 314. It then wrote: "Having found sufficient evidence to uphold the termination of Mother's parental rights under paragraph (E), we need not address paragraph (D)," and it remanded for "further proceedings on Mother's *remaining issues that the court of appeals did not address*." *Id.* (emphasis added).

Rather than take the supreme court's statement at face value, the concurrence posits that review of subsection (D) was not required in *In the Interest of C.E.* because the mother did not appeal to the high court and because the court of appeals' subsection (D) holding was not affected

---

[8] The "either/or" approach may be preferable to avoid unsettled or uncertain matters when only one of the grounds between (D) and (E) rests on a strong legal and factual footing. *Cf. In re J.A.B.*, No. 04-23-00907-CV, 2024 WL 1421986, at *3 (Tex. App.—San Antonio Apr. 3, 2024, pet. denied) (noting distinctions in applications of subsections (D) and (E)).

[9] *In the Interest of M.K.V.* is not controlling because it concerned whether review was required when a parent had previously-reviewed findings under subsections (D) and (E) and sought review of subsequent (D) and (E) findings in a subsequent termination order. *In re M.K.V.*, 648 S.W.3d 478, 485 (Tex. App.—San Antonio 2021, no pet.). The *M.K.V.* court determined that review was required, stating: "To the extent that the trial court's findings under subsections (D) or (E) from this case could be relied on in the future, . . . "unreviewed findings under subsections (D) and (E) could create a future risk of a due process violation." *Id.* The *M.K.V.* court did not explain the potential future risk that it identified in that situation. *See id.* Here, as explained, the future risk is the same regardless of whether we uphold one or both of the subsection (D) and (E) findings in the trial court's termination order. *See In re C.E.*, 687 S.W.3d at 314; *In re N.G.*, 577 S.W.3d at 234; *In re I.C.*, 2024 WL 1543302, at *3; *J.B.M.H.*, 2023 WL 2920315, at *8; *see also* Tex. Fam. Code Ann. § 161.001(b)(1)(M).

[10] Subsection 161.003 concerns termination based upon a parent's mental illness. *See* Tex. Fam. Code Ann. § 161.003.

and[,] . . .subsection (D) was not left unreviewed." *In re F.S.F.*, No. 04-24-00125-CV, Slip Op., 6 (Aug. 14, 2024, no pet. h.) (Rios, J., concurring). The mother, of course, did not appeal to the supreme court because she won below. As to the intermediate appellate court's subsection (D) holding it was the subsection (D) analysis not being "left unreviewed," hollowed out and implicitly overruled; while the supreme court did not analyze subsection (D) directly, the intermediate appellate court's subsection (D) analysis was infused with the same mistakes addressed by the supreme court with respect to subsection (E). *See In re C.E.*, 687 S.W.3d at 310–14; *In re C.E.*, No. 02-22-00285-CV, 2023 WL 170762, at *22–23. Moreover, the supreme court reversed the entirety of the court of appeals' judgment. *See In re C.E.*, 687 S.W.3d at 314. The supreme court's legal-sufficiency review did not reach subsection (D), and it did not remand for reconsideration simply because no due process concerns remained after the supreme court upheld the trial court's subsection (E) finding.

Tellingly, the concurrence does not "provide the details of its analysis" as to the trial court's subsection (D) finding. *See In re N.G.*, 577 S.W.3d at 237. In that respect we are in accord. Due process does not require that we detail our analysis as to subsection (D) after having found, as we have, that the evidence is legally and factually sufficient to support the trial court's subsection (E) finding.

### III. CONCLUSION

We affirm the trial court's parental termination order.

Rebeca C. Martinez, Chief Justice